**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**
_____

GENERAL MOTORS LLC and
GENERAL MOTORS COMPANY,

           Plaintiffs,

v.                                                               Case No. 20-12668

ALPHONS IACOBELLI, FCA US LLC,
FIAT CHRYSLER AUTOMOBILES N.V.,
and JEROME DURDEN,

           Defendants.
_____/

**OPINION AND ORDER GRANTING PLAINTIFFS' MOTION TO REMAND AND
REMANDING THIS CASE TO WAYNE COUNTY CIRCUIT COURT**

Plaintiffs General Motors LLC and General Motors Company brings this action for fraud, fraud by omission, aiding and abetting breach of fiduciary duty, unfair competition, and civil conspiracy against Defendants FCA US LLC and Fiat Chrysler Automobiles N.V. (collectively "FCA"); fraud, fraud by omission, breach of fiduciary duty, and civil conspiracy against Defendant Alphons Iacobelli; and civil conspiracy against Defendant Jerome Durden. (ECF No. 1-4, PageID.237-55.)

The case was filed in Wayne County, Michigan, Circuit Court and removed on September 30, 2020. (ECF No. 1.) On the face of the complaint, the court lacks subject-matter jurisdiction. Plaintiffs have filed a motion to remand. (ECF No. 4.) Defendant FCA and Defendant Iacobelli each filed responses, (ECF Nos. 16, 18); Plaintiffs replied. (ECF Nos. 19, 20.) The court has reviewed the record and does not find a hearing to be

necessary. E.D. Mich. L.R. 7.1(f)(2). Plaintiffs' motion will be granted, and this case will be remanded to Wayne County Circuit Court.

## I.  BACKGROUND

In November 2019, Plaintiffs filed suit in the United States District Court against all four Defendants and a fifth individual, Michael Brown. (Case No. 19-13429, ECF No. 1.) Plaintiffs alleged Defendants engaged in a long-running bribery scheme involving officials of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"). (*Id.*) As a result of the alleged bribery scheme, Plaintiffs claimed Defendant FCA gained a competitive advantage over Plaintiffs, specifically by lowering labor costs below that of Plaintiffs. (*E.g.*, *id.*, PageID.90.)

In that federal court action, presided over by Hon. Paul D. Borman, Plaintiffs brought three counts under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(b)-(d), one count for common law unfair competition, and one count of civil conspiracy to commit unfair competition. (*Id.*, PageID.78-93.) On June 15, 2020, the court declined supplemental jurisdiction over the state claims, (*Id.*, ECF No. 71), and on July 8, 2020, the court dismissed the remaining RICO claims with prejudice. (*Id.*, ECF No. 82.) The court's judgment is currently on appeal before the Sixth Circuit.

On September 14 and 15, 2020, Plaintiffs filed two lawsuits in state court. The first alleged counts of fraud, fraud by omission, unfair competition, aiding and abetting breach of fiduciary duty, and civil conspiracy against Defendant FCA. (ECF No. 1-2, PageID.90-102.) The second involved claims of breach of fiduciary duty, fraud, fraud by omission, and civil conspiracy against Defendant Iacobelli. (ECF No. 1-3, PageID.154-

2

66.) Defendant FCA removed the first action to federal court on September 18, 2020, alleging the parties were completely diverse and were thus subject to federal jurisdiction. (Case No. 20-12556, ECF No. 1.) On September 20, 2020, Plaintiffs filed a notice of voluntary dismissal in federal court, (*id.*, ECF No. 4), and the court dismissed the claims without prejudice on September 21, 2020. (*Id.*, ECF No. 5.)

After the dismissal, on September 22, 2020, Plaintiffs amended their complaint in the second lawsuit against Defendant Iacobelli to add Plaintiffs' claims against Defendant FCA. (ECF No. 1-4.) Plaintiffs also added Defendant Durden to the suit, alleging he engaged in a civil conspiracy with the other Defendants. (*Id.*, PageID.254.) That complaint was removed to this court on September 30, 2020. (ECF No. 1.)

## II.  STANDARD

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Generally, for a federal court to have subject-matter jurisdiction, a claim must either "aris[e] under" federal law, 28 U.S.C. § 1331, or the parties must have diverse citizenship and an amount in controversy exceeding $75,000, 28 U.S.C. § 1332(a). The first category is "federal-question jurisdiction" and the second is "diversity jurisdiction." "Each serves a distinct purpose: Federal-question jurisdiction affords parties a federal forum in which to vindicate federal rights, whereas diversity jurisdiction provides a neutral forum for parties from different States." *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019).

Diversity jurisdiction requires complete diversity. "In a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same

State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

## III. DISCUSSION

Defendant FCA admits no federal claim is brought and that the parties are not completely diverse on the face of the complaint. (ECF No. 1, PageID.13.) Plaintiffs are citizens of Michigan and Delaware. (ECF No. 1-4, PageID.176; ECF No. 1, PageID.11-12.) Defendant FCA claims its two entities are citizens of the Netherlands and the United Kingdom, (ECF No. 1, PageID.12-13), although Plaintiffs alleges Defendant FCA US LLC is "based in Auburn Hills, Michigan." (ECF No. 1-4, PageID.176.) More to the point, both Plaintiffs and Defendant FCA admit that Defendants Iacobelli and Durden are citizens of Michigan. (ECF No. 1, PageID.13; ECF No. 1-4, PageID.177-78.)

Plaintiffs move to remand this case, pointing to Defendant FCA's reliance on diversity jurisdiction. (ECF No. 4.) Defendant FCA presents two arguments in favor of continued jurisdiction: fraudulent joinder and severance of Plaintiffs' claims against Defendants Iacobelli and Durden. (ECF No. 16, PageID.371, 382.) The court will address each in turn.

### A. Fraudulent Joinder

**1. Application**

The law is well established that a plaintiff may choose to add non-diverse parties in an otherwise state-law action, effectively defeating diversity jurisdiction and

4

preventing removal to a federal forum. "[T]he plaintiff is the master of the complaint and has the option of naming only those parties the plaintiff chooses to sue." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 91 (2005) (quoting 16 James Wm. Moore et al., Moore's Federal Practice § 107.14(2)(c) (3d ed. 2005); *see also Smith v. Nationwide Prop. and Cas. Ins. Co.*, 505 F.3d 401, 407 (6th Cir. 2007) ("[The plaintiff] can plead to avoid federal jurisdiction."). However, courts have established a narrow exception, fraudulent joinder, to protect defendants from "abusive pleading." 14C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3723.1 (4th ed. 2020).

Due to the unusual nature of fraudulent joinder, the defendant's burden of proving it is exceptionally high. "The non-[re]moving party's motive for joining the non-diverse party to the lawsuit is 'immaterial to [the court's] determination.'" *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 951 (6th Cir. 2011) (quoting *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999)). Instead, the defendant must show that "it is clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law," in that "there is [no] colorable basis for predicting that [Plaintiffs] may recover." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 432-33 (6th Cir. 2012) (quotations removed); Wright & Miller, *supra* ("[T]here need be only a possibility that a right to relief exists."). This standard is "similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss." *Id.* at 433. The court "must resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the non[-]removing party." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (quotations removed). "All doubts as to the propriety of removal are resolved in favor of remand." *Id.*

Defendants attack all counts of Plaintiffs' complaint against Defendants Iacobelli and Durden. Review of the briefs demonstrates that Defendants have not met their burden of showing that Plaintiffs' claims have no "colorable basis" for relief. *Casias*, 695 F.3d at 433.

Plaintiffs' fraud claim against Defendant Iacobelli is not clearly invalid. Plaintiffs allege Defendant Iacobelli was at or near the center of a bribery scheme with Defendant FCA to obtain preferential labor agreements and conditions from the UAW. (ECF No. 1-4, PageID.192-93, 198, 200-05.) After facilitating illicit payments to union leaders for years, according to Plaintiffs, Defendant Iacobelli "abruptly resigned" from Defendant FCA and "spent months courting [Plaintiffs'] personnel to hire him" in a conspiracy with Defendant FCA to obtain confidential information from within Plaintiffs' organization. (*Id.*, PageID.225-26.) Defendant Iacobelli was hired by Plaintiffs as the Executive Director of Labor Relations. (*Id.*, PageID.227-28.) While there, he was given "substantial oversight and involvement in [collective-bargaining-agreement] negotiations." (*Id.*) According to Plaintiffs, Defendant Iacobelli then filtered Plaintiffs' confidential information, including "labor strategy," to Defendant FCA and the UAW. (*Id.*)

To bring a successful fraud claim in Michigan, a plaintiff must show "(1) [t]hat [the] defendant made a material representation; (2) that it was false; (3) that when [the defendant] made it [he or she] knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that [the defendant] made it with the intention that it should be acted upon by [the] plaintiff; (5) that [the] plaintiff acted in reliance upon it; and (6) that [the plaintiff] thereby suffered injury." *Titan Ins. Co. v. Hyten*, 491 Mich. 547, 817 N.W.2d 562, 567-68 (2012). Inducing the plaintiff to enter

6

into a contract by means of fraud is a valid claim under Michigan law. *See Custom Data Sols., Inc. v. Preferred Cap., Inc.*, 274 Mich. App. 239, 733 N.W.2d 102, 104-05 (2006).

Assuming Plaintiffs' allegations to be true and resolving any ambiguity in the law in favor of Plaintiffs, the complaint sufficiently alleges a fraud claim against Defendant Iacobelli. *Coyne v. Am. Tobacco Co.*, 183 F.3d at 493. He plausibly made a material and intentional misrepresentation when he informed Plaintiffs that he left Defendant FCA, and wanted a job with Plaintiffs, because of a personal disagreement. *Titan Ins. Co.*, 817 N.W.2d at 567-68. (ECF No. 1-4, PageID.226, 247.) In actuality, according to Plaintiffs, Defendant Iacobelli was in business with Defendant FCA and wanted an executive position with Plaintiffs to funnel confidential information to Defendant FCA and the UAW; Defendant Iacobelli also wanted to avoid continuing an investigation by the government into the bribery scheme at Defendant FCA. (*Id.*) Plaintiffs present colorable allegations that Defendant Iacobelli made these misrepresentations as part of a conspiracy with Defendant FCA and others, and intended for Plaintiffs to rely on them. *Titan Ins. Co.*, 817 N.W.2d at 567-68. Plaintiffs allege they did in fact rely on the statements and "would not have hired [Defendant] Iacobelli into [Plaintiffs'] Labor Relations department or maintained his employment." *Id.*; *see Custom Data Sols., Inc.*, 733 N.W.2d at 104-05. (ECF No. 1-4, PageID.248.) This information allegedly furthered Defendants' conspiracy and Defendant FCA's competitive advantage over Plaintiffs. (*Id.*, PageID.228, 248.) Plaintiffs plausibly pled injury. *Titan Ins. Co.*, 817 N.W.2d at 567-68.

Plaintiffs' fiduciary duty claim against Defendant Iacobelli is also not facially meritless. "A fiduciary relationship arises from the reposing of faith, confidence, and

7

trust and the reliance of one upon the judgment and advice of another." *In re Monier Khalil Living Trust*, 328 Mich. App. 151, 936 N.W.2d 694, 703 (2019) (quotation removed). "To establish a claim for breach of fiduciary duty, a plaintiff must prove (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damages caused by the breach of duty." *Highfield Beach at Lake Mich. v. Sanderson*, --- N.W.2d ----, 2020 WL 1445415, at *11 (Mich. Ct. App. Mar. 24, 2020).

Corporate officers, as with other high-level employees, owe fiduciary duties to the organizations on which they serve. *See Camden v. Kaufman*, 240 Mich. App. 389, 613 N.W.2d 335, 338-39 (2000) (citing Mich. Comp. Laws § 450.1541a); 6 Mich. Jur. *Corporations* § 143 (2020); *see also Delphi Auto. PLC v. Absmeier*, 167 F. Supp. 3d 868, 884 (E.D. Mich. 2016) (stating that "high-level employees" owe fiduciary duties). Defendants do not contest that Defendant Iacobelli, Executive Director of Labor Relations, (ECF No. 1-4, PageID.227), was a fiduciary. (*E.g.*, ECF No. 18, PageID.406, Defendant Iacobelli's Response ("Mr. Iacobelli will assume he had a fiduciary duty to GM.").) The court finds the first element sufficiently pled. *Highfield Beach at Lake Mich.*, 2020 WL 1445415, at *11.

Plaintiffs allege that Defendant Iacobelli orchestrated a long-running conspiracy to bribe labor leaders and undermine Plaintiffs' competitive standing. (ECF No. 1-4, PageID.192-93, 198, 200-05.) Despite nominally leaving Defendant FCA and joining Plaintiffs, the complaint alleges Defendant Iacobelli continued to advance this scheme by working from within Plaintiffs' organization, and with access to high-level labor negotiation strategies, to disclose Plaintiffs' confidential information. (*Id.*, PageID.227-28, 248, 252.) This is alleged to have harmed Plaintiffs and helped FCA. (*Id.*)

8

If true, it is hard to imagine a more clear-cut case for breach of fiduciary duties. Defendant Iacobelli was, according to Plaintiff, placed in the highest positions of corporate responsibility. (*Id.*, PageID.227-28.) He had a duty "to act in good faith for the benefit of the corporation," *Wagner Eleectric Corp. v. Hydraulic Brake Co.*, 269 Mich. 560, 257 N.W. 884, 886 (1934), and "subordinate[] [his] personal interests to that of [Plaintiffs]." *Wallard v. Access BIDCO, Inc.*, 236 Mich. App. 303, 600 N.W.2d 664, 666 (1999) (emphasis removed). Yet Defendant Iacobelli allegedly continued to receive payments through foreign bank accounts from one of Plaintiffs' primary competitors to advance the competitor's business interests and corrupt labor relations to the disadvantage of Plaintiffs. This plainly alleges actions taken for Defendant Iacobelli's personal interests contrary to the best interest of Plaintiffs. *Wallard v. Access BIDCO, Inc.*, 600 N.W.2d 664, 666; *Highfield Beach at Lake Mich.*, 2020 WL 1445415, at *11. Finally, Plaintiffs adequately alleged they were harmed. *Highfield Beach at Lake Mich.*, 2020 WL 1445415, at *11. (ECF No. 1-4, PageID.205-06, 228, 252.)

With at least two colorable claims against a non-diverse defendant, *Casias*, 695 F.3d at 433, additional analysis into Plaintiffs' remaining claims against Defendants Iacobelli and Durden is unnecessary.

Fraudulent joinder is not applicable, and this case will be remanded. 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

**2. Defendants' Arguments in Favor of Jurisdiction**

Defendant FCA makes several arguments in opposition. First, it argues Plaintiffs have not adequately pled that Defendant Iacobelli advanced his position in a bribery

9

scheme with Defendant FCA by committing corporate espionage. (ECF No. 16, PageID.373-377 ("[Plaintiffs] allege[] no facts to support its corporate espionage theory.").) This is a rather remarkable assertion, given the detailed description of the alleged conspiracy provided in the complaint, (ECF No. 1-4, PageID.193-206); Plaintiffs assert unambiguously Defendant FCA, with the hired help of Defendant Iacobelli, bribed UAW leaders no less than fifty times. (*Id.*, PageID.173-74, 190, 192-99, 200-12, 219-20, 222-24, 226, 229, 234-35.)

The complaint alleges explicitly that "[Defendants] Iacobelli and Durden . . . began a long-running intentional scheme of improper payments to certain UAW officials through [a joint UAW-Chrysler Training Center] and through foreign financial institutions." (*Id.*, PageID.193.) Plaintiffs allege "[Defendants] Iacobelli and Durden have admitted, starting no later than July 2009, . . . [they], and other [Defendant FCA] officials began to transfer hundreds of thousands of dollars of [Defendant FCA] funds to [the UAW Vice President for Chrysler Development]." (*Id.*, PageID.192.) They allegedly "diverted more than $4.5 million . . . to purchase a luxury Ferrari automobile, to pay off the mortgage on a personal residence, to install a swimming pool, spa, and outdoor kitchen at a personal residence, [and] to purchase two $37,500 limited-edition fountain pens," among other expenditures. (*Id.*, PageID.194.) Defendant Iacobelli pleaded guilty to federal charges arising from these bribes. (*Id.*, PageID.192.) For his participation, Plaintiffs allege Defendant FCA "compensated [Defendant] Iacobelli extremely well . . . including providing him with control over millions of dollars held in financial accounts in Switzerland (UBS and Credit Suisse), Italy (Deutsche Bank), Liechtenstein (VP Bank

10

Vaduz), and Singapore (DBS Bank) both directly, through family, and through a corporate entity he controls." (*Id.*, PageID.198.)

Plaintiffs connect Defendant Iacobelli's alleged corporate espionage to this bribery conspiracy. The complaint alleges that Defendant Iacobelli resigned from Defendant FCA and sought employment with Plaintiffs to "continue[] his work as part of the FCA-UAW bribery scheme." (*Id.*, PageID.225-26.) Defendant Iacobelli allegedly wanted to work for Plaintiffs so he could "provide [Defendant] FCA and other conspirators . . . confidential . . . information." (*Id.*, PageID.226.) Plaintiffs allege that this was accomplished and "[Defendant] Iacobelli's ongoing loyalties and role in the [FCA-UAW] conspiracy had been bought and paid for through . . . foreign accounts." (*Id.*, PageID.228.) Defendant FCA's argument that Plaintiffs have not even alleged a "colorable claim," *Casias*, 695 F.3d at 432-33, or a "possibility," Wright & Miller, *supra*, that Defendant Iacobelli was paid to infiltrate Plaintiffs and advance the UAW-bribery conspiracy is unpersuasive.

Defendant FCA briefly mentions that Plaintiffs cannot properly make allegations "upon information and belief," (ECF No. 16, PageID.374), pointing to a few of Plaintiffs' allegations regarding Defendant FCA's payments to Defendant Iacobelli having been made in that form.[1] (ECF No. 1-4, PageID.197-98, 228.) Notably, Defendant does not cite a provision in the Federal Rules that bars such statements. Federal pleadings

---

[1] Defendant FCA does not fully address this issue, but it appears to be scrutinizing Plaintiffs' complaint under the standard for Rule 12(b)(6) motions to dismiss. While that standard is forgiving to plaintiffs, fraudulent joinder is even "more lenient." *Casias*, 695 F.3d 433.

11

standards instead require only that Plaintiffs present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Pleading on information and belief is important and useful where the proof of allegations is within the possession of others. 5 Wright & Miller, *supra*, § 1224 ("[P]leading on information and belief [may] [be] a useful form . . . whenever the pleader must rely on information furnished by others."); *Starkey v. JPMorgan Chase Bank*, 573 F. App'x 444, 447 (6th Cir. 2014) ("[P]leading on information and belief may be permissible in certain circumstances . . . sometimes a plaintiff may lack personal knowledge of a fact."); *In re Darvocet, Darvon, and Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)) (assuming "information-and-belief pleading is permissible when 'the facts are peculiarly within the possession of the defendant'"). Otherwise, federal pleading rules would implicitly require pre-complaint discovery, and defendants would have little incentive and no legal obligation to comply. Further, "[b]y presenting to the court a pleading[,] . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . factual contentions have evidentiary support." Fed. R. Civ. P. 11(b). Punishing Plaintiffs for explicitly stating some allegations are based on "information and belief" would merely incentivize removing the language and making assertions directly "to the best of [Plaintiffs'] knowledge, information, and belief." *Id.* The quality of pleadings would not likely improve.

Of course, a plaintiff cannot couch a legal conclusion on assertions made "on information and belief." *See 16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727

12

F.3d 502, 506 (6th Cir. 2013) (finding a pleading inadequate where it alleged in conclusion that a bank issued loans based on race "upon information and belief"). But that is true for all pleadings, with or without the added qualifier. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of a cause of action's elements will not do."). Detailed and intricate financial information, which Defendants allegedly took great efforts to conceal, is not presumably in the possession of Plaintiff, *In re Darvocet, Darvon, and Propoxyphene Prods. Liab. Litig.*, 756 F.3d at 931, and Plaintiffs' allegations are in no way conclusory. *Twombly*, 550 U.S. at 555. (*See* ECF No. 1-4, PageID.229 ("Defendants' scheme was inherently self-concealing, as secrecy was essential to perpetuate the scheme.").)

Defendant FCA next argues that Plaintiffs' claims of illicit payments to the UAW are preempted under federal law and the *Garmon* doctrine. (ECF No. 16, PageID.377-80.) The focus of fraudulent joinder analysis is whether the claims against the *non-diverse defendants* are so patently implausible that recognizing their citizenship would amount to an abuse of process. *See Casias*, 695 F.3d at 432-33; 14C Wright & Miller, *supra*, § 3723.1. Defendant FCA does not explain how this preemption argument would not defeat the entirety of Plaintiffs' case. Yet this is not a Rule 12(b)(6) inquiry, *Casias*, 695 F.3d 433, and the court is not in position to decide the merits of the case. *See In re Darvocet, Darvon, and Propoxyphene Prods. Liab. Litig.*, 889 F. Supp. 2d 931, 938 (E.D. Ky. 2012) ("Preemption is a federal defense that goes to the merits of a claim. As such, it does not support a finding of fraudulent joinder."); *Alongi v. Ford Motor Co.*, 386 F.3d 716, 723 (6th Cir. 2004) (emphasis removed) (holding that *Garmon* preemption "does not provide a basis for removal to federal court"); *see also Northwestern Ohio*

13

*Adm'rs, Inc. v. Walcher & Fox, Inc.*, 270 F.3d 1018, 1027 (6th Cir. 2001) ("The party arguing *Garmon* preemption," not Plaintiffs, "bears the burden of showing" the doctrine applies.).

In essence, Defendant FCA asks the court to decide, before obtaining jurisdiction, whether Plaintiffs' case is successful. Respect for the plaintiff's choice of defendants is the overwhelming default in American law, *Lincoln Prop. Co.*, 546 U.S. at 91, *Coyne*, 183 F.3d at 493, and "[w]ithout jurisdiction the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998). Plaintiffs present colorable claims against Defendant Iacobelli and fraudulent joinder is inapplicable. *Casias*, 695 F.3d at 432-33.

Finally, Defendant FCA argues Defendant Iacobelli did not have a fiduciary duty to disclose his prior involvement in the bribery scheme when he joined Plaintiffs. (ECF No. 16, PageID.380-82.) As explained above, Plaintiffs have stated more than a colorable claim that Defendant Iacobelli breached his fiduciary duties when he allegedly funneled confidential information to advance the FCA-UAW conspiracy. *Casias*, 695 F.3d at 432-33. Analysis of a duty to disclose is unnecessary.

Defendant Iacobelli adds more reasons why the court should retain jurisdiction. First, he claims Plaintiffs' fraud claims are not alleged with particularity. (ECF No. 18, PageID.401, 403-04.) He cites Michigan Court Rule 2.112(B). While the court reviews the substance of Plaintiffs' claims under state law, the Federal Rules of Civil Procedure govern procedure, such as the required particularity for pleadings. *See* Fed. R. Civ. P. 1; *Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, 757 F.3d 540, 546 (6th Cir. 2014) ("[T]he Federal Rules of Civil Procedure . . . apply to all civil cases brought in

14

federal courts."); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (quotations removed) ("[Federal] Rule [of Civil Procedure] 9(b) applies to all averments of fraud or mistake."). Furthermore, the court's inquiry is whether Plaintiffs' claim is colorable and not a fraudulent attempt to avoid diversity jurisdiction. *See Casias*, 695 F.3d at 432-33; 14C Wright & Miller, *supra*, § 3723.1. The court is not making a determination on whether Plaintiffs adequately pled a fraud claim, if the court were to retain jurisdiction.[2] *See U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 502-03 (6th Cir. 2007) (analyzing Federal Rule of Civil Procedure 9(b)'s particularity requirement in the context of a motion to dismiss). Defendant Iacobelli cites no precedent from the Sixth Circuit or Supreme Court that permits the court to apply an enhanced particularity requirement to the fraudulent joinder analysis.

Next, Defendant Iacobelli claims his alleged statements on the nature of his departure from Defendant FCA were mere opinions. "[S]tatements related to future action and to opinion [are] not actionable as fraud because [they are] not predicated on a statement relating to a past or an existing fact." *Cummins v. Robinson Twp.*, 283 Mich. App. 677, 770 N.W.2d 421, 436 (2009) (citing *Kamalnath v. Mercy Mem. Hosp. Corp.*, 194 Mich. App. 543, 487 N.W.2d 499, 506 (1992)). Plaintiffs allege Defendant Iacobelli continued to work with Defendant FCA and the UAW, despite nominally leaving Defendant FCA, and sought employment with Plaintiffs in order to leak confidential information. (ECF No. 1-4, PageID.225-27, 247.) Defendant's alleged false

---

[2] State courts are more than capable of resolving disputes going to the merits of the case, especially when the claims are under state law. If the case becomes removable at a later date, "for example . . . by reason of the [voluntary] dismissal of a nondiverse party," Defendants "may remove the case to federal court." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 69 (1996) (citing 28 U.S.C. § 1446(b)(3)).

representation that he left Defendant FCA due to a personal disagreement, (ECF No. 1-4, PageID.226, 247), is plausibly a statement of an existing fact used to deceive Plaintiffs, not a mere conjecture or good-faith guess. *See Cummins*, 770 N.W.2d at 436.

Finally, Defendant Iacobelli argues Plaintiffs' fiduciary duty claim is barred by Michigan's statute of limitations. (ECF No. 18, PageID.407.) Like Defendant FCA's *Garmon* preemption argument, "the burden is on the defendant to show that the statute of limitations has run." *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013). It is an affirmative defense, *id.*, that is not relevant to a fraudulent joinder inquiry. *See Casias*, 695 F.3d at 432-33.

### B. Severance

Defendant FCA argues that the court can use its discretion under Federal Rule of Procedure 21 to sever Plaintiffs' claims against Defendants Iacobelli and Durden to obtain jurisdiction. (ECF No. 16, PageID.382-87.) Defendant Iacobelli opposes severance. (ECF No. 18, PageID.408.)

Under Rule 21, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." However, it is fundamental that in order to remove a case to federal court, "diversity jurisdiction must exist *at the time of removal*." *Roberts v. Mars Petcare US, Inc.*, 874 F.3d 953, 958 (6th Cir. 2017) (emphasis added); *accord Williamson v. Aetna Life Ins. Co.*, 491 F.3d 369, 375 (6th Cir. 2007). Defendant FCA admits diversity did not exist when it removed the case. (ECF No. 1, PageID.13.) The Sixth Circuit has repeatedly held that "[w]hen a non-diverse party has been joined as a defendant, then in the absence of a substantial federal question the removing defendant may avoid remand *only* by demonstrating that the non-diverse party was fraudulently

16

joined." *Jerome-Duncan, Inc.*, 176 F.3d 904, 907 (6th Cir. 1999) (emphasis added); *accord Casias*, 695 F.3d at 432. As explained above, non-diverse Defendants were not fraudulently joined.

Notably, Defendant FCA cites no Sixth Circuit or Supreme Court precedent supporting, or even permitting, the court to establish jurisdiction after an improper removal through severance of colorable claims against non-diverse defendants. The Sixth Circuit has allowed severance of non-diverse parties, but in very different scenarios. In *Soberay Mach. & Equip. Co. v. MRF Ltd. Inc.*, the parties actively litigated for months and the plaintiff consented to, and actually requested, severance of a non-diverse party. 181 F.3d 759, 761-63 (6th Cir. 1999). In *Safeco Ins. Co. of Am. v. City of White House*, the case was litigated for years and the plaintiff and the court mistakenly believed there was complete diversity at the time the complaint was filed. 36 F.3d 540, 543-45 (6th Cir. 1994). This case and its merits have not been litigated, and Plaintiffs, along with Defendant Iacobelli, strongly oppose severance. Plaintiffs are "the master[s] of the complaint," *Lincoln Prop. Co.*, 546 U.S. at 91, and the court will not manufacture jurisdiction by splintering the claims and parties Plaintiffs intentionally joined.

## IV. CONCLUSION

The parties in this case are not diverse and the court lacks jurisdiction. Non-diverse Defendants were not fraudulent joined and the court will not sever claims against them to create jurisdiction. Accordingly,

17

IT IS ORDERED that Plaintiffs' "Motion to Remand" (ECF No. 4) is GRANTED.

This case is REMANDED to Wayne County Circuit Court.

    s/Robert H. Cleland    /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: November 3, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 3, 2020, by electronic and/or ordinary mail.

    s/Lisa Wagner    /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\20-12668.IACOBELLI.MotiontoRemand.RMK.RHC.2.docx